Melvin L. **PACE**, Plaintiff,

v.

**SUNTECH, INCORPORATED and United Student Aid Services**, Defendants.

**Civ. A. No. 3:94–CV–675BN.**

United States District Court,
S.D. Mississippi,
Jackson Division.

Aug. 8, 1995.

Sharon Denotra Henderson, Henderson & Lumumba, Jackson, MS, Halbert E. Dockins, Jr., Halbert E. Dockins, Jr., Jackson, MS, for Melvin L. Pace.

Peter Larkin Doran, Eugene Ainsworth Simmons, Wells, Moore, Simmons & Neeld, Jackson, MS, for Suntech, Inc.

William F. Ray, Watkins & Eager, Jackson, MS, for United Student Aid Services.

*OPINION AND ORDER*

BARBOUR, Chief Judge.

The Court has before it two Motions for Summary Judgment, one filed by Defendant United Student Aid Services, Inc. ("USA"), the other by Suntech, Incorporated ("Suntech"). Plaintiff has responded to both motions. The Court, having considered the motions, responses and supporting memoranda, finds that the motions are well taken and should be granted, and that the Plaintiff's cause of action against both Defendants should be dismissed with prejudice.

I. *Background* [1]

Plaintiff Melvin L. Pace ("Pace") seeks injunctive relief requiring Defendants USA and Suntech to provide additional student aid to him in the form of guaranteed student loans.[2] Under the guaranteed student loan program, Suntech services loans for lenders,

---

1. The Court draws the factual and procedural background of this case from undisputed facts as submitted by the Defendants, and from the Plaintiff's Complaint.

2. Plaintiff originally sought relief through both a temporary restraining order and a preliminary injunction. In light of the full briefing by all litigants on the summary judgment motion, and considering that the matter has been set for trial on the September calendar of this Court, the Court entered an order *sua sponte* on July 18, 1995, dismissing Plaintiff's Application for Temporary Restraining Order and Motion for Preliminary Injunction.

and USA services loans for guarantors. Pace is currently a law student enrolled at the University of Mississippi School of Law, who has completed two years of study. He seeks additional loans so that he may complete law school.

In July of 1986, Pace signed an "Application For A Guaranteed Student Loan/Promissory Note For A Guaranteed Student Loan." Pursuant to the Note, he received a disbursement of funds (the "1986 loan"), which was guaranteed under the guaranteed student loan program of the federal government. Pace became delinquent in his obligation to repay this 1986 loan and in January, 1992, Defendant USA placed the 1986 loan in default status.[3]

In anticipation of beginning law school, Pace sought financial aid in the form of student loans. By virtue of two applications dated June 21, 1993, he sought separate loans, one in the amount of $4,494.00, and the other in the amount of $2,470.00. Notwithstanding the default status of the 1986 loan, Pace completed both loan applications and promissory notes by stating that he had no outstanding student loan balance, and that he had never defaulted on a student loan. On June 23, 1993, in an attempt to clear the balance on the outstanding 1986 loan, Pace sent a check to USA Funds, but it was returned for insufficient funds.

Based upon the information in the two documents Pace signed in June 1993, he was declared eligible for guaranteed student loans for the 1993–94 school year, and funds were disbursed under the guaranteed loan arrangement. In the summer of 1994, Pace contacted the financial aid office at the University of Mississippi to seek additional financial aid in the form of student loans for the 1994–1995 academic year. He was informed that his guaranteed student loan did not guaranty, and upon contacting the lender was informed that the 1986 loan was in default. Pace paid the balance of the 1986 loan in August 1994.

By letter of September 28, 1994, Suntech was informed by USA that Pace was judged by the guaranty agency to be ineligible for guaranteed student loans issued on August 11, 1993, and December 15, 1993, based on a previous default of a student loan on January 16, 1992. Pursuant to the instructions of USA (the guaranty agency), Suntech generated a demand letter dated October 14, 1994, informing Pace that he was ineligible for certain loans, and that pursuant to federal regulations, demand for total payment was being made requiring $7,479.27 to be paid not later than thirty days from the date of the letter. At the time demand was made, Pace had already received one-half of the $18,500.00 guaranteed student loan that he had taken for the 1994–1995 academic year. He has not paid back the $7,479.27, and Suntech has withheld the second disbursement of his 1994–1995 loan.

Pace essentially asks this Court for equitable relief, arguing that the "errors on his application were not due to any intentional or willful misrepresentation on his part," and that "Defendants [had] some independent responsibility to verify the information disclosed on the loan applications and promissory notes." Pl.'s Resp. Br. at 12. In an attempt to explain his erroneous negative response to the question, "Have you ever defaulted on an educational loan?," Pace submits by affidavit the following account:

> I submitted loan applications in February 1993 for Title IV aid for the purpose of attending the University of Mississippi School of Law. On the February 1993 loan applications, I stated that I had approximately $900.00 in outstanding Title IV loans incurred in 1986. On February 6, 1993, I personally contacted the Defendant USA Services with regard to the outstanding Title IV loans and the effect of the outstanding balance on my present application for Title IV assistance. I was told to make three consecutive payments in order to prevent a default. Between February 1993 and July 1993 I received Notices of

---

**3.** While these facts are laid out in Plaintiff's Complaint at paragraphs and nine and twelve, and admitted in response to the listing of undisputed facts by Suntech, Pace denies the statement by Defendant USA in its listing of undisputed facts that "[i]n 1992 Mr. Pace's 1986 loan was declared to be in default, due to delinquency in payments." Pace's inconsistent efforts at hairsplitting fail to create genuine issues of material fact.

Eligibility, Student Aid Reports, Notices of Loan Guarantees and Disclosure Statements, and Promissory Notes. I entered a voluntary agreement with Defendant USA Services to extinguish the 1986 loans, by paying $475.00 on May 28, 1993 and the balance of $407.64 by June 30, 1993. This agreement was proposed by me and entered into because I did not care to leave the small balance outstanding, not to cure any default in order to become eligible for Title IV aid.[4]

On June 21, 1993 I executed Promissory Notes under an oath which stated in pertinent parts:

I, the borrower, certify that the information contained on this form is true, complete and accurate to the best of my knowledge and belief and is made in good faith.

I authorize my lender, subsequent holder or their agents, or the MGSLA to check my credit and employment history and to answer questions about its experience with me.

I certify that I am not in default on a Stafford loan ...

I, to the best of my knowledge and belief and in good faith stated that I owed no balance on any SLS loan and had not defaulted on any previous loan. My knowledge and belief was founded upon the information received from the fact that I paid the loan as diligently as I could and when I could not, I informed the Educational Loan Servicing Center in order to have my monthly payments forborne, [and of the] fact that the previous loan was in Forebearance at the time the Defendant USA Services said it was in default. My information, knowledge and belief was further based upon my conversations regarding the prior loan with Toni, representative of Defendant USA Services on February 3, 1993, conversations regarding the guaranteeing of the 1993 funds and the posting of the June 30, 1993 payment with Chad, representative of Defendant USA Services

on July 8, 1993, the conversations with Ms. Vicki McQueen of SunTech, Inc. regarding the same. As of June 21, 1993, I had already made arrangements with USA Services and intended to uphold my obligations thereunder to satisfy the outstanding student loan, therefore I put a zero in the outstanding loan amount. I also based my knowledge and belief upon the fact that I had received Notices of Eligibility, Student Aid Reports and Notices of Loan Guarantees and Disclosure Statements none of which indicated any previous default. I simply answered the questions to the best of my knowledge. I state that if I had known of a default I would have utilized my State of Mississippi Retirement funds to pay any default.

Aff. of Pace at 1–3 (paragraph numbers omitted).

Nowhere does Pace explain how his understanding justified a "no" response to the unambiguous question, "Have you *ever* defaulted on an educational loan?" (emphasis added). It is perhaps an acknowledgement of this fundamental flaw in his case that leads Pace to conclude in his affidavit, "I am without any remedy at law and unless this Court grants the relief requested I will be without the benefit of my pursuits, lodged deeply in debt, and deprived of an opportunity to enter the profession of my choosing and labor." Aff. of Pace at 5.

## II. Applicable Legal Standard for Consideration of Defendants' Motions

Defendants' motions are styled as motions to dismiss for failure to state a claim for relief, or in the alternative, for summary judgment. Although motions to dismiss and motions for summary judgment are interrelated and are often asserted in the alternative, there are differences in the legal standards applied under the two motions. The purpose of a Rule 12(b)(6) motion to dismiss is to test the statement of the claim for relief

---

4. Although Pace states that he was told to submit three consecutive payments, and that he "entered a voluntary agreement with Defendant USA Services to extinguish the 1986 loans, by paying $475.00 on May 28, 1993 and the balance of $407.64 by June 30," nowhere does he allege that he actually made the three consecutive payments, or that he paid the balance of $407.64 by June 1993.

as set out in the complaint. *See Murray v. Amoco Oil Co.,* 539 F.2d 1385, 1387 (5th Cir.1976). The motion may be granted " 'only if it appears that no relief could be granted under any set of facts that could be proved consistent with the allegations.' " *Barrientos v. Reliance Standard Life Ins. Co.,* 911 F.2d 1115, 1116 (5th Cir.1990) (quoting *Baton Rouge Bldg. & Constr. Trades Council v. Jacobs Constructors, Inc.,* 804 F.2d 879, 881 (5th Cir.1986)). Thus, in considering a motion to dismiss, the court's inquiry is limited to the contents of the complaint. *Jackson v. Procunier,* 789 F.2d 307, 309 n. 4 (5th Cir.1986).

■ In contrast, a motion for summary judgment goes beyond the pleadings and tests the sufficiency of the evidence a party can produce in support of those issues on which it will bear the burden of proof at trial. Because the parties have submitted and the Court has considered materials outside of the pleadings, the Court will treat Defendants' motions as motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Fed.R.Civ.P. 12(b)(6); *Murphy v. Inexco Oil Co.,* 611 F.2d 570, 573 (5th Cir.1980); *Young v. Biggers,* 938 F.2d 565, 568 (5th Cir.1991).

Rule 56 of the Federal Rules of Civil Procedure states in relevant part that summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(c). The United States Supreme Court has held that this language "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *see also Moore v. Mississippi Valley State Univ.,* 871 F.2d 545, 549 (5th Cir.1989); *Washington v. Armstrong World Indus.,* 839 F.2d 1121, 1122 (5th Cir.1988).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record in the case which it believes demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552. The movant need not, however, support the motion with materials that negate the opponent's claim. *Id.* As to issues on which the non-moving party has the burden of proof at trial, the moving party need only point to portions of the record that demonstrate an absence of evidence to support the non-moving party's claim. *Id.* at 323–324, 106 S.Ct. at 2552–2553. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. at 2553.

Summary judgment can be granted only if everything in the record demonstrates that no genuine issue of material fact exists. The district court, therefore, must not "resolve factual disputes by weighing conflicting evidence, ... since it is the province of the jury to assess the probative value of the evidence." *Kennett–Murray Corp. v. Bone,* 622 F.2d 887, 892 (5th Cir.1980). Summary judgment is improper where the court merely believes it unlikely that the non-moving party will prevail at trial. *National Screen Serv. Corp. v. Poster Exchange, Inc.,* 305 F.2d 647, 651 (5th Cir.1962).

### III. *Law Applicable to Guaranteed Student Loan Program, And Analysis Under That Law*

#### A. **Eligibility for 1993 Loans**

■ Pace's loans, and the issues in this case, are governed by Title IV of the Higher Education Act of 1965, 20 U.S.C. § 1070 *et seq.* Through this federally-devised system of providing financial assistance through government guarantees of student loans, the United States both makes financial aid available and imposes restrictions on eligibility therefor. Eligibility for guaranteed student loans under Title IV is determined under 20 U.S.C. § 1091, "student eligibility," which states that "a student ... must not owe a refund on grants previously received *or be in*

*default on any loan from a student loan fund at any institution provided for in part D of this subchapter, or a loan made, insured, or guaranteed by the Secretary under this subchapter and part C of subchapter I of 34 of Title 42 for attendance at any institution ...*" 20 U.S.C. § 1091 (emphasis added).[5]

Because Pace's 1986 loan was guaranteed by the subchapter identified in the statute, and because Pace was in default on his 1986 loan in 1993, he was ineligible for the 1993 loans he obtained, and Defendants were required by the applicable law and regulations to call those loans. Despite Pace's protests that he attempted to correct the default, there is no issue of material fact in the record before this Court that Pace was in default on his 1986 loan when he applied for and received disbursements for his 1993 loan, regardless of his attempts to remedy the default.

### B. Effect of Erroneous Statements in 1993 Loan Applications

█ Pace admits his delinquent 1986 loan was placed in default in January 1992. In spite of Pace's attempts to reach some agreement to pay off the loan after it was placed in default, the default was not cured until August 1994. His June 1993 answers in the negative to the questions, "Have you ever defaulted on an educational loan?," were erroneous. The effect of obtaining the 1993 loans based upon the erroneous statements in his application documents is found in 34 C.F.R. § 682.412, entitled "Consequences of the failure of a borrower or student to establish eligibility."

(a) The lender shall immediately send to the borrower a final demand letter meeting the requirements of § 682.411(e) when it learns and can substantiate that the borrower or the student on whose behalf a parent has borrowed, without the lender or school's knowledge at the time the loan was made, provided false or erroneous information or took actions that caused the student or borrower—

(1) to be ineligible for all or a portion of a loan made under this part;

(2) to receive a Stafford Loan subject to payment of federal interest benefits as provided under § 682.301 for which he or she was ineligible;

. . . .

(c) In the final demand letter transmitted under (a) of this section, the lender shall demand that within thirty (30) days the borrower repay in full the principal amount of the ineligible portion of the loan, accrued interest thereon, and all special allowance paid by the Secretary thereon up through the most recently ended quarter.

. . . .

(3) If a borrower fails to comply with the terms of a final demand letter described in (a) of this section, the lender shall treat the entire loan as in default, and—

(1) with its next quarterly interest billing submitted under § 682.305, refund to the Secretary the amount of the interest benefits received from the Secretary on the ineligible portion of the loan, whether or not repaid by the borrower; and

(2) within the time specified in § 682.406(a)(5), file a default claim thereon with the guarantee agency for the entire unpaid balance of principal and accrued interest.

34 C.F.R. § 682.412.

It is undisputed that, on behalf of the lender, Suntech sent the requisite demand letter and filed a default claim with USA, the guaranty agency. The Court therefore finds that, in all respects, Defendants' actions leading to this lawsuit were not only proper, but were required pursuant to the controlling federal regulations.

---

**5.** Eligibility to receive student loans is also governed by 34 C.F.R. § 668.7, which provides in part that a student is eligible for a loan as long as he "is not in default and certifies that he or she is not in default, on any loan made under the National Defense/Direct Student Loan, Perkins Loan, ICL or GSL programs." 43 C.F.R. § 668.7(a)(7).

**26**

### C. Alternative Arguments Asserted by the Plaintiff

 Because of the clarity of the pertinent regulations, and the propriety of the Defendants' actions under those regulations, Pace urges this Court to find in his favor by issuing a finding that "the actions mandated under Statute and Regulation balanced against the irreparable and irretrievable loss of career opportunity, money and time warrant equitable relief...." Pl.'s Mem.Br. at 1. Pace bolsters this argument throughout his brief with an insistence that, whatever mistakes he made in filling out the loan applications, those mistakes were not due to fraud on his part. He argues repeatedly that he "never knowingly made a false statement or misrepresentation about any aspect of his eligibility or loan status." *Id.* at 10. It is this absence of fraud which Pace argues raises genuine issues of material fact which preclude summary judgment.

Pace's reliance on the absence of proof of fraudulent intent in this case is misguided. The Court need not make a finding of fraud in order to find that no genuine issue of material fact exists to warrant trial of this case. Plaintiff was in default on the 1986 loan when he received funds for the 1993–94 loan, and was thus ineligible to receive the latter loan. Further, Pace, provided false or erroneous information or took actions that caused him to be ineligible for all or a portion of the 1993–94 loan. His attempt to shift the blame to the lenders, for their failure to discover acknowledgment of the default on earlier loan applications, does not negate the effect of his erroneous answers in June of 1993, upon which the lenders had a right to rely, and which, under federal regulations, required the lenders to take the actions which led to this lawsuit.

### IV. *Conclusion*

Pace requests equitable relief from this Court because, he says, "Failure to grant relief to the Plaintiff would serve to punish the Plaintiff for exercising diligence and relying on information he received." *Id.* at 19. The Court disagrees. Because of the loans he received in 1993 and 1994, granted to him when he did not have the funds to cover a check for his earlier, defaulted loan, Pace has been able to attend two years of law school. He received these funds not as gifts, but as a participant in a government loan program which requires disclosure of past defaults. His "detrimental reliance" argument is therefore without merit, since it was Plaintiff's own representation and Defendants' reliance thereon which has led to the predicament from which Pace now attempts to extricate himself.

IT IS THEREFORE ORDERED that the requests of the Plaintiff Melvin L. Pace for a temporary restraining order and injunctive relief are hereby denied, and that Defendants' Motions for Summary Judgment are hereby granted.

IT IS FURTHER ORDERED that final judgment should be entered in Defendants' favor, dismissing Plaintiff's claims, with prejudice.

SO ORDERED.